**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 24-00238-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TALANZO DEBROW (01) | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Talanzo Debrow's ("Debrow") Motion to Dismiss the Indictment. See Record Document 17. Debrow moves to dismiss the one-count indictment, under which he is charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1). See id. The United States of America ("the Government") filed an opposition. See Record Document 22. Debrow replied. See Record Document 26. For the reasons set forth below, Debrow's Motion (Record Document 17) is **DENIED**.

**BACKGROUND**

On May 5, 2019, troopers with the Louisiana State Police attempted to stop Debrow while he was driving a stolen car in Shreveport. See Record Document 22 at 6. Debrow shifted the car twice to ram into the troopers' cars. See id. On May 8, 2020, Debrow was convicted for aggravated criminal damage to property in the First Judicial District Court in Caddo Parish. See id.; see also Exhibit 1. After he pled guilty, the state court sentenced him to a term at hard labor for a period of three years and deemed his conviction a crime of violence. See Record Document 22 at 6. On November 26, 2024, a federal grand jury returned a one-count indictment charging Debrow with possession of

a firearm by a convicted felon. See Record Document 22 at 5; see also Record Document 1.

## LAW AND ANALYSIS

**I. Law.**

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." D.C. v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817 (2008). Thus, under the Supreme Court's most recent guidance in Bruen, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. Bruen, 597 U.S. 1, 24, 142 S. Ct. 2111, 2129–30 (2022). First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Id. If the Second Amendment does cover the individual's conduct, the court then must ask whether the government has satisfied its burden of showing "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. Id. at 26, 2131.

Recently, in U.S. v. Diaz, the Fifth Circuit analyzed an as-applied constitutional challenge to § 922(g)(1) under Bruen. 116 F. 4th 458 (5th Cir. 2024). The Court held that a charge serving as a predicate for a defendant's § 922(g)(1) charge must rely on previous history. Id. at 467. A felon is among "the people" protected by the Second Amendment. Id. at 466. "The plain text of the Second Amendment covers the conduct prohibited by §

922(g)(1)." Id. at 467. To satisfy its burden under Bruen, "the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Id. Furthermore, the "[e]vidence must be 'relevantly similar' to the challenged law." Id. When a court assesses similarly, it should "consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'" Id.

**II. Analysis.**

In his Motion, Debrow specifically challenges the validity of § 922(g)(1) as it purportedly prohibits his Second Amendment right to possess and use arms for personal protection and defense. See Record Document 17 at 3–4. Section 922(g)(1) states:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Debrow argues that under recent Supreme Court precedent in Bruen and Fifth Circuit precedent in Diaz, § 922(g)(1) is unconstitutional as applied to him. See Record Document 17. He contends the Government does not specifically identify any prior convictions that are punishable by imprisonment for a term exceeding one year. See id. at 4. Additionally, he asserts that the Government has failed to prove the Nation has a longstanding tradition of disarming someone with a criminal history analogous to him. See id.

In opposition, the Government argues Debrow's prior felony conviction for aggravated criminal damage to property "fits neatly" within the Nation's historical tradition of firearm disarmament in a common-sense manner, especially because he committed a violent act in public by deliberately ramming the stolen car he was driving into a pair of state police cars. See Record Document 22 at 17–18. In addition to Bruen and Diaz, the Government cites to historical statutes from England that prohibited and severely punished analogous and even less severe conduct than Debrow's. See id. at 18. Thus, the Government submits Debrow's Motion should be denied. See id. at 19.

Debrow replied, arguing that felons are included in "the people" mentioned in the Second Amendment. See Record Document 26 at 1–2. Additionally, Debrow asserts that the Government has failed to make the threshold showing that the aggravated criminal damage to property was severely punished at the Founding. See id. at 2. Debrow claims the Government's arguments are at odds with Diaz and the historical evidence. See id. He reiterates that his Motion should be granted because count one of the indictment infringes upon his Second Amendment rights and is unconstitutional as applied to him. See id. at 6.

The first step of the Bruen analysis is satisfied here. The Fifth Circuit has held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1);" thus, Debrow's conduct prohibited by § 922(g)(1) is covered by the Second Amendment. Diaz, 116 F. 4th at 467. See U.S. v. William Robinson, No. 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024). Since the first step is satisfied, the Government has the burden to demonstrate that regulating Debrow's possession of a firearm is consistent with the Nation's historical tradition of firearm regulation. Id.

In Diaz, the Fifth Circuit conducted an analysis of "Bruen's historical inquiry into our Nation's tradition of regulating possession by felons in particular." 116 F. 4th at 466. The Court only analyzed Diaz's pertinent criminal history, which consisted of vehicle theft, evading arrest, and possessing a firearm as a felon. Id. In the instant case, Debrow's pertinent criminal history consists of a prior felony conviction under La. R.S. §14:55 (Aggravated Criminal Damage to Property). See Exhibit 1. Under step two of Bruen, the Government "must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." Diaz, 116 F. 4th at 467. La. R.S. § 14:55 provides: "Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." LA. REV. STAT. § 14:55(A). Section § 922(g)(1) is stated above.

In Diaz, the Fifth Circuit held that "[g]oing armed laws are relevant historical analogues to § 922(g)(1)." 116 F. 4th at 471. Going armed laws punished "'those who had menaced others with firearms'" and disrupted the public. Id. at 470–71. The Court found that the burden imposed by these laws on the Second Amendment is comparable to the burden imposed by § 922(g)(1) because "[t]hey both provide for permanent arms forfeiture as a penalty." Id. at 471. Ultimately, the Court held that "[i]mposing permanent disarmament as a punishment is also within our Nation's history and tradition," holding § 922(g)(1) constitutional as applied to defendant Diaz. Id.

In U.S. v. Garner, Judge Donald E. Walter in the Western District analogized the Louisiana statute for aggravated battery with going armed laws. No. 24-00112-01, 2024 WL 4820794, at *4 (W.D. La. Nov. 18, 2024). Under the Louisiana statute, "an individual

5

is convicted of aggravated battery where he or she commits battery with a dangerous weapon." Id. (citing LA. REV. STAT. § 14:34). The court found that both the aggravated battery and going armed statutes "punish and deter in the same way: permanent disarmament." Id. Because of this "sufficient historical analogue," the defendant's indictment under § 922(g)(1) was constitutional as applied to him. Id.

In the instant case, the Court is called to conduct a similar historical analogy with La. R.S. 14:55. The Government makes a sufficient historical analogue between the Louisiana statute and going armed laws. The Government argues that both laws seek to punish those that have used their guns in a way likely to lead to violence or to upset the public order. See Record Document 22 at 17–18. Furthermore, like § 922(g)(1), these founding-era laws authorized the permanent dispossession of offenders' guns as a consequence of that crime. See id. at 17. The Court agrees with the Government's arguments. There is a sufficient historical analogue between La. R.S. § 14:55 and going armed laws. A violation of either can result in permanent disarmament. Additionally, the purpose behind the establishment of these laws is the same: to protect the public by keeping firearms out of the hands of individuals who seek to do harm to others. Debrow intentionally committed a violent act in public which endangered the lives others. Therefore, Debrow's prior conviction under La. R.S. § 14:55 is consistent with the Nation's historical tradition.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Debrow's Motion to Dismiss the Indictment (Record Document 17) is **DENIED**.

An Order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 10th day of February, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE